UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NANCY THURMAN, Individually and as next )
friend to TASHA JONES, )
    *Plaintiffs*, )
) 1:09-cv-1453-JMS-TAB
*vs*. )
)
PRIME QUEST MANAGEMENT, LLC, )
WILLIAMSBURY ON THE LAKE, LLC, )
d/b/a ABNEY LAKE APARTMENTS, )
    *Defendants.*

## **ORDER**

In this action, Plaintiffs Nancy Thurman and Tasha Jones allege race and disability discrimination and intentional infliction of emotional distress against Defendants (collectively, "Abney Lake"). [Dkt. 7.] Presently before the Court is Abney Lake's Partial Motion for Summary Judgment, directed only to Plaintiffs' claim of intentional infliction of emotional distress. [Dkt. 32.]

### I.

#### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would – as a matter of law – conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529,

533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. 317. Moreover, the non-moving party must do more than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.

### BACKGROUND

Plaintiffs, both African-American women, have lived together as tenants of Abney Lake since 1991. [Dkt. 7 at 2.] Ms. Jones has a chronic, debilitating neurological disease that causes severe mental and physical disabilities, and Ms. Thurman, her mother, has cared for her for 38 years. [Dkt. 38 at 4.] Ms. Jones is "bed-ridden and requires 24-hour care and frequent emergency medical treatment and hospitalizations." [*Id.*] She often requires emergency medical transportation to take her from her apartment to physicians' offices. [*Id.*]

The nearest entrance/exit to Plaintiffs' apartment is the southern entrance, which also provides the shortest distance from Plaintiffs' apartment to the Westview Hospital emergency room. [*Id.*] In August 2008, Abney Lake closed the southern entrance to the apartment complex, which Ms. Thurman had used to transport Ms. Jones to the hospital since 1991. [*Id.*; dkt. 38-3 at 3.] When Ms. Thurman asked Abney Lake's caucasian security guard to open the gate so that she could take Ms. Jones to a medical appointment, "he told her to move out if she did not like closure of the south entrance." [*Id.*]

About ten years ago, Abney Lake provided Plaintiffs with a handicapped parking space, as it did for all its disabled tenants, and built a handicap ramp to facilitate access between the parking lot and the sidewalk. [Dkt. 7 at 2.] After the parking space was constructed, Ms. Thurman consistently parked her vehicle there. [*Id.*]

On July 30, 2009, Ms. Thurman was parked in her usual handicapped parking space, and Abney Lake directed a company called A-Mass Towing, to tow Ms. Thurman's car. [*Id.*; dkt. 38-3 at 2.] Ms. Thurman was told later that day that management reported her car illegally parked in the handicapped space. [Dkt. 38-3 at 2.]

The next day, Plaintiffs (through a conversation with another tenant) discovered that they were paying more in rent than other tenants in a similar size apartment. [*Id.*]

Over the course of their tenancy, Plaintiffs allege that they have received several eviction notices, unannounced and unscheduled maintenance calls, delays in requested service, withholding of Ms. Jones' medication, and that Abney Lake failed to shovel and salt sidewalks by their residence in a reasonable time.[1] [*Id.*]

### III.

#### DISCUSSION

Abney Lake contends that summary judgment should issue on Plaintiffs' intentional infliction of emotional distress claim because Plaintiffs cannot establish two essential elements of the tort. [Dkt. 33 at 1].

**1) Intentional Infliction of Emotional Distress**

To prove intentional infliction of emotional distress, Plaintiffs must show that Defendants: (1) engaged in "extreme and outrageous conduct" (2) which intentionally or recklessly (3)

---

[1] Plaintiffs do not elaborate on these facts or dispute them in their response brief.

causes (4) severe emotional distress to another. *Branham v. Celadon Trucking Services, Inc.*, 744 N.E.2d 514, 523 (Ind. Ct. App.2001). The intent to harm emotionally constitutes the basis of the tort. *Bradley v. Hall*, 720 N.E.2d. 747 (Ind. Ct. App. 1999).

### a) Did Defendants Engage in Extreme and Outrageous Conduct?

The requirements of proving extreme and outrageous conduct are rigorous. *Id*. Indeed:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id*. (quoting Restatement (Second) of Torts § 46 (1965)). In other words, "[t]he law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable." *Branham,* 744 N.E.2d at 518.

Here, Plaintiffs allege that Abney Lake's actions, when coupled with intent to harm Plaintiffs, meet this rigorous standard. Specifically, Plaintiffs allege: 1) Abney Lake locked the emergency gate at the southern entrance to the apartment complex, 2) it charged Plaintiffs more rent than other tenants, 3) it towed Plaintiffs' car from the handicap parking space, and 4) it told Plaintiffs to move if they did not like the treatment that was bestowed upon them. [Dkt. 38 at 2-3.]

Although Plaintiffs do not allege that Abney Lake intended its conduct to result in harm, they do argue that each of these actions was compounded by discriminatory intent, and that "[it] is precisely this discriminatory animus . . . that makes Abney Lake's conduct extreme and outrageous such that a reasonable jury could declare them utterly intolerable in a civilized society."

[*Id.* at 2.] However, Plaintiffs do not offer any evidence that Abney Lake had discriminatory animus, an omission that fatally undermines their argument.

Abney Lake argues that this case is consistent with the many Indiana cases in which summary judgment was granted against plaintiffs who failed to show extreme and outrageous conduct. *See Branham*, 744 N.E.2d at 519; *see also Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958 (Ind. Ct. App. 2001); *Gable v. Curtis*, 673 N.E.2d 805 (Ind. Ct. App. 1996) (summary judgment granted for a homebuilder's wife who called a purchaser seven times in one hour, threatening to repossess the home, threatening to come over, and demanding payment); *Creel v. I.C.E. & Asso., Inc*., 771 N.E.2d 1276 (Ind. Ct. App. 2001) (secret insurance claim surveillance videotaping of subjects while in church services not extreme and outrageous). In each case Abney Lake cites, the conduct at issue, although inconvenient, tortious, and even disturbing, did not rise to the level of extreme and outrageous under Indiana law.

In response, Plaintiffs draw the Court's attention to *Bradley*, for the proposition that "[r]easonable persons may differ on the questions of whether [defendant's] conduct was extreme and outrageous and, if so, whether that conduct caused [plaintiff] to suffer severe emotional distress." 720 N.E.2d. at 753. They additionally point to an Indiana case in which summary judgment was denied for defendant. *See Watters v. Dinn*, 633 N.E.2d 280, 284-85 (denying summary judgment against a defendant who revealed confidential mental health records of his former wife in a custody dispute); *see also Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991) (denying summary judgment when a defendant entered a plaintiff's home uninvited at night, threatened him and brandished a weapon, and later approached the plaintiff in a restaurant holding a gun a foot away).

As a general matter, the Court agrees that Indiana law recognizes that reasonable people can sometimes differ on questions about extreme and outrageous conduct. *Bradley*, 720 N.E.2d. 747. However, the case at issue does not remotely approach the level at which reasonable people would have reason to disagree, i.e., the level at which a court would have reason to deny summary judgment for Abney Lake. Giving Plaintiffs the benefit of the inferences, Abney Lake's actions caused great inconvenience, aggravation, and even increased risk of danger to Plaintiffs. Moreover, one or more of these actions may provide traction for Plaintiffs' discrimination claim against Abney Lake. [Dkt. 7 at ¶¶ 12-14.] However, no reasonable person could find that any of these acts – individually or collectively – was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," so as to permit liability for intentional infliction of emotional distress. *Id.* To the contrary, Defendants' alleged conduct is precisely the type of action which Indiana law describes as non-actionable. *Branham*, 744 N.E.2d at 523.

Therefore, the Court finds that Abney Lake did not engage in extreme and outrageous conduct. Summary judgment is appropriate for Abney Lake on this basis alone.

**b) Did Plaintiffs Suffer Severe Emotional Distress?**

Abney Lake also argues that Plaintiffs cannot prove the third prong of intentional infliction of emotional distress – that they sustained "severe emotional distress." *Creel*, 771 N.E.2d at 1276.

Abney Lake asserts, and Plaintiffs do not dispute, that Ms. Jones has not experienced any actual mental injury attributable to its alleged conduct and cannot maintain an action for intentional infliction of emotional distress.[2] [Dkt. 33 at 6; dkt. 38 at 9.] The Court thus finds that

---

[2] Plaintiffs merely contend that closing the entrance creates a potentially life-threatening obstacle for future medically necessary treatment of Ms. Jones' disability. [Dkt. 38 at 4.]

summary judgment is appropriate on Ms. Jones' claim of intentional infliction of emotional distress.

As to Ms. Thurman, Plaintiffs argue that "a reasonable jury could find that a mother who has cared for her disable[d] adult daughter for 38 years would suffer emotional harm from conduct that placed her daughter's life in danger," and that this, coupled with Abney Lake's "discriminatory intent" creates actionable harm. [Dkt. 38 at 9.] Plaintiffs further argue that "the extent of Ms. Thurman's injuries are best left to a jury because numerous reasons account for not seeking medical or psychological care, including financial constraints, religious beliefs, and cultural perceptions." [Dkt. 38 at 9.]

The Seventh Circuit, however, has been clear that overcoming a motion for summary judgment requires more than mere speculation by the non-moving party. *Singer*, 593 F.3d at 533. Because Ms. Thurman will bear the burden of proof at trial regarding her mental injury, she must produce evidence to support that claim. *Celotex,* 477 U.S. at 323 (holding that Rule 56(c) requires summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). If she cannot, summary judgment must issue. *Id.* Regardless what any other mother might feel under the circumstances, Ms. Thurman has offered no evidence as to how she actually felt. Evidence that merely establishes a possibility of cause, or which lacks reasonable certainty or probability, is not enough by itself to support a verdict; in short, liability may not be predicated purely upon speculation. *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994); *see also Luphahla v. Marion County Sheriff's Dept.*, 868 N.E.2d 1155, 1157-58 (Ind. Ct. App. 2007); *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005).

Plaintiffs do not dispute, or even mention, Abney Lake's characterization of the evidence regarding the extent of Ms. Thurman's injuries in their response brief. [Dkt. 38.] The Court can do no more for Plaintiffs than infer from the record that after the incident with Abney Lake, Ms. Thurman attended three family doctor's appointments (which amounted to no more than $300); received medication for symptoms that overlap with pre-existing anxiety and stress; and has not received any treatment for the past six months. [Dkt. 33 at 6.] Although Plaintiffs make the bare allegation in their pleadings that Ms. Thurman's stress and anxiety resulted from Abney Lake's conduct, [dkt. 3 at 7 ¶ 17], they do not provide any evidence to suggest that this is more than a mere temporal relationship. To this point, the Seventh Circuit has clearly held that a mere temporal relationship between defendant's conduct and an alleged injury is insufficient to create a jury issue. *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607 (7th Cir. 1993). And, of course, Fed. R. Civ. Proc. 56 specifically cautions that a plaintiff may not rest on their pleadings, at this juncture, evidence must be produced.

Because Plaintiffs neither demonstrate that either of them was severely injured nor refute Abney Lake's argument that they were not, the Court finds that Plaintiffs do not meet the threshold requirement for pursuing a claim of intentional infliction of emotional distress.

In sum, because Plaintiffs do not establish that Abney Lake's conduct was extreme or outrageous under Indiana law, their claim of intentional infliction of emotional distress fails on the first prong. Even if they could establish that Abney Lake's alleged conduct was extreme and outrageous, the Court could not find, on this meager evidentiary record, that its alleged conduct caused either Ms. Jones or Ms. Thurman "severe emotional distress." Because Plaintiffs have not failed to raise a genuine issue as to two material elements of this claim, the Court grants

summary judgment for Abney Lake on Plaintiffs' claim for intentional infliction of emotional distress.

## IV

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment. [Dkt. 32.] No partial final judgment will issue at this time for the claim resolved by this order.

11/01/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Cynthia L. Ball
LANDMAN & BEATTY, LLP
clball@landmanbeatty.com

James F. Beatty
LANDMAN & BEATTY
jfbeatty@landmanbeatty.com

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Donald D. Levenhagen
LANDMAN & BEATTY LLP
dlevenhagen@landmanbeatty.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrobatty@aol.com

Blair Wheat
ROBERTS & BISHOP
bwheat@roberts-bishop.com